# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement and release (hereinafter "Agreement") is entered into between and among Hartford, Sepco, and its Affiliates (collectively, the "Parties").

## RECITALS

WHEREAS, certain Asbestos Claims have been brought, and in the future may be brought, against Sepco seeking damages and other relief for bodily injury and/or property damage; and

WHEREAS, Hartford issued or allegedly issued certain liability insurance Policies to Sepco, or under which Sepco alleges it is entitled to insurance coverage; and

WHEREAS, on January 14, 2005, Sepco and Hartford entered into a *Confidential Settlement Agreement and Release Between Sepco Corporation and First State Insurance Company and Twin City Fire Insurance Company Regarding the Handling and Payment of Asbestos-Related Bodily Injury Claims* (the "CIP Agreement") to resolve their disputes relating to coverage for Asbestos Claims; and

WHEREAS, certain disputes arose in connection with Hartford's obligation to pay Asbestos Claims pursuant to the CIP Agreement; and

WHEREAS, on August 14, 2014, Hartford demanded arbitration before Judge Mark B. Epstein (Ret.) regarding disputes between Hartford and Sepco concerning the Policies and the CIP Agreement (the "Coverage Arbitration"); and

WHEREAS, on January 14, 2016, Sepco filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, commencing the Bankruptcy Case before the Bankruptcy Court; and

WHEREAS, Sepco and Hartford wish to resolve the disputes between and among them, to provide for the dismissal of their respective claims in the Coverage Arbitration, and

to provide for the other consideration, promises, releases and covenants set forth in this Agreement; and

WHEREAS, as part of the compromise and resolution of the Coverage Arbitration, Sepco and its Affiliates have agreed to sell, and Hartford has agreed to purchase, Sepco's Policy Interests and the Affiliates' Sepco-Related Policy Interests free and clear of all Interests of any Person, subject and pursuant to the terms of this Agreement;

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants as set forth below, it is hereby agreed as follows:

## DEFINITIONS

The following definitions apply to this Agreement only and are not intended to be used for any other purpose. In addition, the singular form of a word includes the plural and vice versa; the conjunctive "and" includes the disjunctive "or" and vice versa; all pronouns apply to the male, female and neutral genders; the word "any" includes the word "all" and vice versa; the word "including" means including without limitation; and the past tense of a word includes the present tense and vice versa.

a.      **"Affiliates"** means the Debtor's past, present, and future direct or indirect parent companies, and any subsidiaries of or other companies associated or affiliated with or directly or indirectly owned and/or controlled by such parent companies, and any officers, directors, stockholders, partners, or employees of any such entity while acting in his capacity as such.

b.      **"Affiliates' Sepco-Related Policy Interests"** means the Interests of Affiliates in the Policies to the extent, but only to the extent, that such Interests arise from or relate to Sepco's Policy Interests or Sepco's past or present operations.

16-50058-amk      Doc 318-1      FILED 01/31/18      ENTERED 01/31/18 12:38:43      Page 3 of 35

c.     **"Approval Date"** means the date on which the Approval Order has become a Final Order.

d.     **"Approval Order"** means (i) an order in substantially the form attached hereto as Exhibit 2; or (ii) an order in such other form agreed to in writing by the Parties, entered by the Bankruptcy Court, that (a) approves this Agreement, (b) authorizes the Parties to undertake the settlement and sale of the Policy Interests set forth in this Agreement, and (c) provides for the Injunction.

e.     **"Asbestos Claims"** means any and all Claims arising out of or based upon or in any way attributable to asbestos and/or asbestos-containing products or materials alone or in combination with any other dust, mineral, fiber, substance or material.

f.     **"Bankruptcy Case"** means the Chapter 11 case filed January 14, 2016, by Sepco in the United States Bankruptcy Court for the Northern District of Ohio, *In re Sepco Corporation*, Civil Action No. 16-50058, and shall include any appeals therefrom (and any adversary proceedings therein).

g.     **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

h.     **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Ohio.

i.     **"Claims"** means any and all past, present or future claims, liabilities, demands, obligations, duties, complaints, cross-complaints, cross-claims, third party complaints, counterclaims, requests, administrative proceedings, directives and notices, counts, judgments, executions, attachments, debts, lawsuits, actions, direct actions, writs, liens, inquiries, rights, damages, costs, or any other cause of action or order, including Direct Action Claims, Extra-

- 3 -

Contractual Claims, "claims" as that term is defined in 11 U.S.C. §101(5) and "demands" as that term is defined in 11 U.S.C. §524(g)(5).

j.      **"Committee"** means the Official Committee of Asbestos Claimants appointed by the United States Trustee in the Bankruptcy Case on February 1, 2016.

k.      **"Consenting Entities"** means the Committee and the FCR.

l.      **"Direct Action Claim"** means any Claim by a Person against Hartford, on account of, based upon, arising from, or in any way attributable to the rights afforded Sepco under a Policy, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against Hartford; provided, for the avoidance of doubt, that the term "Direct Action Claim" does not include any past, pending, or future Claim by or on behalf of the Debtor's Affiliates.

m.      **"Effective Date"** means the date the last Party signs this Agreement, and this Agreement shall be effective as of such date.

n.      **"Extra-Contractual Claim"** means any Claim against Hartford, seeking any type of relief based upon conduct prior to the Effective Date, including compensatory, exemplary or punitive damages, on account of alleged bad faith; misconduct, failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; any type of alleged misconduct; or any other act or omission of Hartford of any type for which Sepco seeks relief other than coverage or benefits under an insurance policy, including any Claims for economic loss, general damages, attorneys' fees or costs in connection with Hartford's handling of, or Hartford's refusal to handle, any Claims against Sepco.

16-50058-amk    Doc 318-1    FILED 01/31/18    ENTERED 01/31/18 12:38:43    Page 5 of 35

o.  **"FCR"** means Lawrence Fitzpatrick, solely in his capacity as the future claimants' representative appointed in the Bankruptcy Case, and any person who succeeds him in that capacity.

p.  **"Final Order"** means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated or stayed, and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken or, if taken, remains pending.

q.  **"Hartford"** means The Hartford Financial Services Group, Inc. and all of its past, present and future direct and indirect parents, subsidiaries and affiliates, each solely in their capacities as such, and each of its and their respective officers, directors, employees, successors and assigns, each solely in their capacities as such.  For purposes of this Agreement, "Hartford" includes First State Insurance Company and Twin City Fire Insurance Company.

r.  **"Injunction"** means the injunction contained in Paragraph 8 of the Approval Order, or other injunctive relief provided to Hartford and contained in the Approval Order in a form agreed to in writing by the Parties.

s.  **"Interests"** means all liens, Claims, encumbrances, interests and other rights of any nature, whether at law or in equity.

t.  **"Person"** means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, and any federal, state or local governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

- 5 -

u.    "**Plan**" means any Chapter 11 plan confirmed by the Bankruptcy Court in the Bankruptcy Case.

v.    "**Policies**" means any and all liability insurance policies, known and unknown, that were issued or allegedly issued by Hartford (as it exists on the Effective Date) to Sepco, or under which Sepco is insured or may claim to be insured or entitled to benefits.

w.    "**Policy Interests**" means (i) Sepco's Policy Interests and (ii) the Affiliates' Sepco-Related Policy Interests.

x.    "**Section 524(g) Injunction**" means an injunction issued pursuant to 11 U.S.C. § 524(g) in connection with confirmation of a Plan.

y.    "**Sepco**" means the Sepco Corporation and its officers, directors, employees, successors (including the Trust) and assigns, each solely in their capacities as such.

z.    "**Sepco QSF Fund**" means the Qualified Settlement Fund established or to be established by Sepco under Section 468B of the Internal Revenue Code, pursuant to authority granted by the Bankruptcy Court, for the purpose of maintaining funds to be used for defending and/or resolving Asbestos Claims against Sepco.

aa.    "**Sepco's Policy Interests**" means Sepco's Interests in the Policies.

bb.    "**Trust**" means any trust established by Sepco pursuant to 11 U.S.C. § 524(g) and the Plan.

## I.    PAYMENT OF SETTLEMENT AMOUNT

A.    Subject to all of the terms of this Agreement, Hartford shall pay the Sepco QSF Fund (or if the Trust has been established, the Trust, in accordance with Section I.B. below) the total amount of Seventeen Million, Five Hundred Thousand and 00/100 U.S. Dollars ($17,500,000.00) (the "Settlement Amount"). The Settlement Amount shall be paid within thirty

(30) days after Hartford receives written notice of the Approval Date from Sepco or any of the Consenting Entities.

  **B.**  If Hartford pays the Settlement Amount prior to the date when the Trust has been established, Hartford shall pay the Settlement Amount to the Sepco QSF Fund. The Settlement Amount shall remain in the Sepco QSF Fund until the Trust is established or until the Bankruptcy Court directs otherwise (through confirmation of the Plan or otherwise). Hartford's obligation to pay the Settlement Amount is subject to the condition that the Approval Date has occurred; provided, however, that Hartford, in its sole discretion, may elect in writing to waive the condition precedent that the Approval Date has occurred and pay the Settlement Amount after the Approval Order has been entered but before the Approval Date has occurred. In the event any payment is due on a date that is not a business day, the payment shall be due on the first business day thereafter.

  **C.**  Subject to the terms of this Agreement, the Parties expressly agree that the Settlement Amount is the total amount Hartford is obligated to pay on account of any and all Claims by or on behalf of Sepco arising from or relating to the Policies or the CIP Agreement.

  **II.**  **BANKRUPTCY-RELATED OBLIGATIONS**

  **A.**  Prior to the Effective Date, Sepco will seek and obtain the Consenting Entities' written consent to Sepco's entry into this Agreement.

  **B.**  No later than five (5) business days after the Effective Date, Sepco shall file a motion seeking entry of the Approval Order, which motion shall be in form and substance acceptable to Hartford, and Hartford and Sepco shall use their best efforts to promptly obtain entry of the Approval Order as a Final Order. Sepco shall serve notice of the motion and any hearing on each of those persons that are identified in Paragraph E of the Approval Order,

provided that notice to any asbestos claimant shall be sent to his or her counsel of record in accordance with the "Asbestos Claimant Notice Procedures" approved in that certain *Order Authorizing . . . Certain Asbestos Claimant Notice Procedures* that the Bankruptcy Court entered on January 22, 2016, in the Bankruptcy Case [at ECF Doc. No. 26]. In addition, to ensure the broadest possible notice, Sepco shall publish notice of the motion and the hearing in The Plain Dealer on two separate occasions. Such notice shall be in a form reasonably acceptable to Hartford.

  **C.**  Hartford's payment of the Settlement Amount is not conditioned upon entry of a Section 524(g) Injunction or confirmation of any Plan. Nevertheless, if any proposed Plan provides for a Section 524(g) Injunction or any other injunctive protection to be afforded to any settling insurance company, Sepco shall designate Hartford as a settling insurance company, or its equivalent, entitled to the benefit of any and all such injunctions, including any Section 524(g) Injunction.

  **D.**  Sepco shall not include any provision in any Plan that adversely affects the rights or benefits of Hartford under this Agreement.

  **E.**  Hartford agrees that (subject to the occurrence of the Approval Date, and except to contend that Sepco has breached this Agreement (including Section II.D.)) Hartford shall not object to the proposed Plan or in any other way participate in the Bankruptcy Case, including by seeking discovery from Sepco or any party in interest in the Bankruptcy Case.

  **F.**  If and when the Plan becomes effective, the rights and obligations of Sepco under this Agreement shall be deemed to have been assigned to the Trust without need of further action by any Party or Person, and the Trust shall be bound by all of the provisions of this Agreement.

- 8 -

Sepco shall continue to be bound by this Agreement and shall retain the obligations and benefits hereunder to the extent consistent with the Plan.

      **G.**      Consummation of this Agreement is expressly conditioned upon the occurrence of the Approval Date, except as expressly otherwise provided in this Agreement.

      **H.**      Notwithstanding anything to the contrary in this Agreement, in the event of any judicial disapproval of this Agreement, including the Bankruptcy Court's refusal to enter the Approval Order, or if on appeal the Approval Order is vacated or reversed, either Party shall have the right to declare this Agreement null and void. In the event this Agreement shall become null and void, all payments made by Hartford pursuant to this Agreement prior to the time it is declared null and void, along with income earned thereon, if any, shall be returned to Hartford.

      **I.**      If this Agreement becomes null and void pursuant to Section II.H. above, then: (1) the Agreement, except for Section VII. (which shall remain in full force and effect), shall be vitiated and shall be a nullity; (2) Hartford shall have no obligation to pay the Settlement Amount pursuant to this Agreement; (3) Sepco shall not be obligated by this Agreement to designate Hartford as a settling insurance company, or its equivalent, and Hartford shall not be entitled under this Agreement to assert as a defense to any Claim any benefit of any injunction under the Plan or contained within the Approval Order; and (4) Hartford and Sepco shall have all of the rights, defenses, and obligations under or with respect to any and all insurance policies and the CIP Agreement that they would have had absent this Agreement, including the right, if any, to object or otherwise participate in the Bankruptcy Case.

## III.    RELEASES

      **A.**      **Release of Hartford.** Upon the Approval Date, and in consideration for payment of the Settlement Amount, Sepco hereby (a) fully and forever releases Hartford from any and all

past, present, and future Claims by or on behalf of Sepco arising from or relating to the Policies or the CIP Agreement (including Asbestos Claims, Direct Action Claims, and Extra-Contractual Claims) to the fullest extent permitted by law, (b) withdraws any and all requests, demands, or tenders for defense or indemnity previously submitted by or on behalf of Sepco to Hartford under the Policies or the CIP Agreement, and (c) surrenders, relinquishes, and releases any further right to tender or present any Claims by or on behalf of Sepco under the Policies or the CIP Agreement. By virtue of the foregoing release, Hartford shall have no duty to defend or indemnify Sepco with respect to any Claims arising from or relating to the Policies.

      **B.**    **Release of Hartford by the Affiliates.** Upon the Approval Date, the Affiliates hereby fully and forever release Hartford from any and all Claims arising from or relating to the Affiliates' Sepco-Related Policy Interests. For the avoidance of doubt, the Affiliates retain any and all Claims against Hartford, including Claims under the Policies, that do not arise from or relate to the Affiliates' Sepco-Related Policy Interests.

      **C.**    **Releases by Hartford.** Upon the Approval Date, Hartford hereby fully and forever releases Sepco from any and all Claims arising from or relating to the Policies or the CIP Agreement. In addition, upon the Approval Date, Hartford hereby fully and forever releases the Affiliates from any and all Claims arising from or relating to the Affiliates' Sepco-Related Policy Interests.

      **D.**    **Unknown or Future Claims.** The Parties expressly acknowledge that there may be changes in the law and/or the Parties may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims released in Sections III.A. through III.C above. Nevertheless, the Parties hereby agree that (subject to Sections II.H and II.I. above) the releases set forth in Sections III.A. through III.C.

above shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts. In addition, the Parties acknowledge they have been advised by their respective legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of the executing of the release which if known by him must have materially affected his settlement with the debtor.**

**E.  Agreement Rights and Obligations Not Affected.** The releases set forth in Sections III.A. through III.C. of this Agreement are not intended to, and shall not, extend to or otherwise release any rights, privileges, benefits, duties, or obligations of the Parties by reason of, or otherwise arising from, this Agreement.

## IV.  DISMISSAL OF THE COVERAGE ARBITRATION

Within five (5) business days of the Approval Date, Sepco and Hartford each shall dismiss, with prejudice and with each Party to bear its own fees and costs, all Claims they have asserted against each other in the Coverage Arbitration.

## V.  JUDGMENT REDUCTION

In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Hartford as a result of a Claim for contribution, subrogation, indemnification or other similar Claim against Hartford for Hartford's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of Hartford for any Claims released in Section III.A. or III.B. above, Sepco and its Affiliates shall voluntarily reduce their judgment(s) or Claim(s) against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation or

- 11 -

indemnification Claims against Hartford.  To ensure that such a reduction is accomplished, Hartford shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Claim and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Hartford from any liability for the judgment or Claim.

## VI.  CONTRIBUTION CLAIMS

Except as otherwise provided in this Agreement, Hartford agrees that it will not assert or file a Claim seeking contribution, indemnity and/or defense against another insurer or other Person in order to recover any portion of the Settlement Amount to be paid under this Agreement; however, nothing herein shall preclude Hartford from filing or asserting such a Claim seeking contribution, indemnity and/or defense in the event another insurer or other Person asserts a Claim for contribution or indemnity against Hartford in the first instance, provided that, to the extent that Hartford recovers from that other insurer or that other Person, the proceeds of such recovery shall be paid by Hartford per Sepco's instruction, after Hartford is reimbursed from such proceeds for its reasonable fees and costs incurred in prosecuting its Claim against that other insurer or that other Person.  Nothing contained in this Agreement shall be construed to prohibit Hartford from making a Claim against any reinsurer or from pursuing its recoveries from any reinsurer in its capacity as such, regardless of the identity or affiliation of the reinsurer.  To the extent that Sepco settles Claims arising out of Claims released in Section III.A. above with any other insurer or other Person, Sepco will use reasonable best efforts to obtain a waiver of that other insurer's or other Person's Claims seeking contribution, indemnity and defense against Hartford based upon, arising out of or in any way attributable to such Claims.

- 12 -

## VII.   NO ADMISSIONS AND NON-ADMISSIBILITY OF THE AGREEMENT

Nothing contained in this Agreement, or in any negotiations, discussions, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties with respect to any matter or any factual or legal issue of any kind.  Except as may be necessary to seek or obtain entry of the Approval Order in the Bankruptcy Case, to enforce the terms of this Agreement, or as may be necessary or useful in the pursuit by Hartford of a reinsurance recovery for sums to be paid under this Agreement, neither this Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be discoverable or admissible in any legal or equitable proceeding of any kind, including any lawsuit, mediation, arbitration, administrative proceeding or action, or any other proceeding or action of any kind.  In addition, Hartford's entry into this Agreement does not constitute an endorsement of any Chapter 11 plan for Sepco or any related trust distribution procedures or a statement of position of any kind as to whether any such plan of reorganization or trust distribution procedures as proposed or confirmed is lawful or reasonable.  Notwithstanding the foregoing, and provided that the Agreement does not become null and void pursuant to Section II.H., Hartford agrees that it shall not object to any Chapter 11 plan that Sepco proposes unless that plan is materially inconsistent with the rights and benefits provided to Hartford under this Agreement.

## VIII.  BINDING EFFECT OF AGREEMENT

All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and their respective successors and assigns, including the Trust.

## IX.  DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning or implementation of this Agreement, the Parties agree to use their best efforts to reach a prompt resolution of such dispute, but in the event they are unable to do so, either party may initiate litigation in an appropriate forum, including the Bankruptcy Court.

## X.  CONSTRUCTION OF AGREEMENT

A.  The Parties represent and acknowledge that they have participated in the preparation and drafting of this Agreement or have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party on the basis that one Party drafted the language of this Agreement or played a greater role in the drafting of the language.

B.  The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

C.  If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.  Notwithstanding the foregoing, the provisions in this Agreement regarding Payment (Section I.) and Releases (Section III.) and the corresponding Definitions shall not be severable from this Agreement.

- 14 -

## XI. MEDICARE REPORTING AND MEDICARE PAYMENTS

A.      Hartford's payment obligations under this Agreement are solely to pay to Sepco the Settlement Amount as set forth herein.  In no event shall Hartford pay directly any claimant, representative of any claimant, or into Sepco's defense counsel's trust account for any Claims.

B.      Hartford shall not have any responsibility to make any required reports (or to make any payments owed or sums to be paid) to Medicare or to the United States government or any agency or instrumentality thereof pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2), and/or under any regulations promulgated thereunder, 42 C.F.R. Section 411.20 et seq., with respect to any payment Sepco receives from Hartford under this Agreement.

## XII. REPRESENTATIONS, WARRANTIES AND OTHER MISCELLANEOUS PROVISIONS

A.      Each Party represents and warrants that, subject to Sepco's obligation to seek Bankruptcy Court approval of this Agreement in the Bankruptcy Case, it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and that no further action is necessary to make this Agreement binding and legally enforceable.

B.      Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of its respective articles of incorporation or by-laws or any contract or agreement by which it is bound.

C.      Each Party represents and warrants that it has not assigned or transferred to any Person any Claim or other matter released herein.  Sepco represents and warrants that it has not assigned or transferred any of its Interests under the Policies.

- 15 -

**D.**     Each Party represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate and good faith compromise of disputed Claims, disputed liabilities and disputed issues.

**E.**     Each Party represents and warrants that it has read this Agreement in its entirety, fully understand all of its terms and the consequences thereof, and that the person signing this Agreement on its behalf has, subject to Sepco's obligation to seek Bankruptcy Court approval in the Bankruptcy Case, full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

**F.**     Each Party represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

**G.**     This Agreement (including the exhibits attached to it) sets forth the entire agreement among the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or verbal (including the CIP Agreement).

**H.**     All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the other Parties and Consenting Entities at the addresses set forth below, or to such other persons or addresses as the Parties or Consenting Entities may designate in writing from time to time:

- 16 -

For Hartford:

James P. Ruggeri, Esq.
Shipman & Goodwin LLP
1133 Connecticut Ave., N.W.
Washington, DC 20036
jruggeri@goodwin.com

For Sepco:

Jeffrey C. Toole, Esq.
Buckley King LPA
1400 Fifth Third Center
600 Superior Avenue East
Cleveland, OH 44114
toole@buckleyking.com

For the Affiliates:

Richard M. Wyner
Goodwin LLP
901 New York Ave. NW
Washington, D.C. 20001
rwyner@goodwinlaw.com

For the Consenting Entities:

Kami E. Quinn
Gilbert LLP
1100 New York Ave., N.W., Suite 700
Washington, DC 20005
quinnk@gotofirm.com

I.  This Agreement may be amended only by a writing signed by or on behalf of

each Party (as well as the Trust, after its formation).

J.  Hartford represents that it has made a good faith search and that it has located no

evidence of any liability policies under which Sepco is insured other than those listed on

Exhibit 1.

K.  This Agreement may be executed in counterparts.

- 17 -

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

SEPCO (as defined)

By: _____

Name: _Marco Corleus_

Title: _President_

Date: _JAN / 31 / 2018_

HARTFORD (as defined)

By: _____

Name: _____

Title: _____

Date: _____

AFFILIATES (as defined)

By: _____

Name: _____

Title: _____

Date: _____

- 18 -

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

SEPCO (as defined)

By: _____

Name: _____

Title: _____

Date: _____

HARTFORD (as defined)

By: _____

Name: Glenn A. Frenkel

Title: V.P. and V.P. of Horizon Management,
as management agent

Date: 1/18/18

AFFILIATES (as defined)

By: _____

Name: _____

Title: _____

Date: _____

- 18 -

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

SEPCO (as defined)

By: _____

Name: _____

Title: _____

Date: _____

HARTFORD (as defined)

By: _____

Name: _____

Title: _____

Date: _____

AFFILIATES (as defined)

By: _____*St?*_____

Name: _*STEVEN MESSNER*_____

Title: _*Vice President*_____

Date: _*1/03/18*_____

- 18 -

The following indicate their consent to the accompanying Settlement Agreement and Release,

dated on or about January 16, 2018, between The Hartford Financial Services Group, Inc., Sepco

Corporation, and the Affiliates (as defined in the Settlement Agreement and Release).

Official Committee of Asbestos Claimants

By: _Kami E Q_____

Name: _Kami E. Quinn_____

Title: _Counsel to the Official Comm._____

Date: _1/20/18_____


Lawrence Fitzpatrick, solely in his capacity as the
future claimants' representative

By: _Lawrence Fitzpatrick_____

Name: _Lawrence Fitzpatrick_____

Title: _Future Claimants' Representative_____

Date: _1/17/18_____

**Exhibit 1**
Insurance Policies

| Insurance Policies Issued to Sepco Corporation | |
|---|---|
| Policy No. | Policy Period |
| 944345 | 9/1/1979 to 9/1/1980 |

| Insurance Policies Issued to The Fluorocarbon Company | |
|---|---|
| Policy No. | Policy Period |
| TXS-101557 | 1/1/1983 to 1/1/1984 |
| EU-000896 | 1/1/1984 to 1/1/1985 |
| EU-000896 | 1/1/1985 to 1/1/1986 |
| EU-000896 | 1/1/1986 to 1/31/1986 |

**Exhibit 2**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | Chapter 11 |
| SEPCO CORPORATION, | Case No. 16-50058 |
| Debtor. | Judge Alan M. Koschik |

### ORDER APPROVING DEBTOR'S SETTLEMENT AGREEMENT WITH THE HARTFORD FINANCIAL SERVICES GROUP, INC. AND AUTHORIZING THE SALE OF POLICY INTERESTS (AS DEFINED IN THE SETTLEMENT AGREEMENT) FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND OTHER ENCUMBRANCES

This matter came before the Court on the motion (the "Motion")[1], of Sepco

Corporation, the above-captioned debtor and debtor-in-possession (the "Debtor"), for an order

pursuant to Sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") (i) authorizing the Debtor to enter into a compromise and settlement with

Hartford pursuant to which (among other things) the Debtor, on behalf of the Debtor's

bankruptcy estate and on its own behalf, will provide Hartford releases, as set forth in the

---

[1]     Except as otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Agreement (as defined herein).

Settlement Agreement and Release (the "Agreement," a copy of which is attached as <u>Exhibit 1</u>); (ii) authorizing the sale of the Policy Interests to Hartford pursuant to the terms and conditions of the Agreement, free and clear of all Interests; (iii) approving the Agreement in all respects; and (iv) enjoining various Claims against Hartford as described in Paragraph 8 below (the "Injunction"). The appearances of all interested parties and all responses and objections to the motion, if any, have been duly noted in the record of the hearing held on _____, 2018 (the "Hearing"). Upon the record of the Hearing, the Motion, said responses and objections, if any, and after due deliberation and sufficient cause appearing therefore, the Court hereby makes the following:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>[2]

### <u>Jurisdiction, Final Order and Statutory Predicates</u>

A.     The Court has jurisdiction over the Motion and relief requested therein, including responses and objections thereto, if any, pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O), as to which this Court has the statutory and constitutional power to enter a final order. Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

C.     The statutory predicates for the relief sought in the Motion are Sections 105(a), 363, and 541 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

---

[2]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

<u>Retention of Jurisdiction</u>

D.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, to the extent provided under 28 U.S.C. § 1334(b), any and all disputes arising from or relating to the Agreement.

<u>Notice of the Motion</u>

E.      The Debtor has provided due and adequate notice of the Motion, the Hearing, the Agreement and the subject matter thereof to all parties in interest pursuant to Bankruptcy Rules 2002 and 6004, in the manner authorized by this Court's *Order Authorizing . . . Certain Asbestos Claimant Notice Procedures* dated January 22, 2016 [Doc. No. 26]. Such notice was good and sufficient under the particular circumstances, and no further notice is necessary. Without limiting the generality of the foregoing, adequate notice of the Motion, the Hearing and the Agreement has been provided, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded, to all parties-in-interest, including (i) the Committee, (ii) the FCR, (iii) all known claimants including (a) all claimants or counsel for claimants who have voted on any proposed Chapter 11 plan submitted by the Debtor, and (b) all such claimants who are known to the Debtor through participation in the Bankruptcy Case, the filing of a pre-petition lawsuit, or otherwise; (iv) the Office of the United States Trustee for Region 9; and (v) all other Persons that, as of the date the Motion was filed, had filed a notice of appearance and demand for service of papers in the Bankruptcy Case or were otherwise listed on the master service list maintained by or on behalf of the Debtor in the Bankruptcy Case.

<u>Sound Business Judgment and Reasonableness</u>

F.      The relief requested in the Motion is in the best interests of the Debtor's

bankruptcy estate, its creditors, claimants and other parties-in-interest. The Debtor has

demonstrated good, sufficient and sound business purposes and justifications for the relief

requested in the Motion and the approval of the settlement contemplated thereby.

G.      The Agreement, including the sale of the Policy Interests free and clear of any

and all Interests, is fair and reasonable and in the best interests of the Debtor and its

bankruptcy estate. The Settlement Amount, once it is paid, represents fair and reasonable

consideration for the sale of the Policy Interests, the release of Claims and the other provisions

set forth in the Agreement. The Agreement is also in the best interests of the claimants and

other parties in interest, because it is contemplated that the proceeds of the settlement

ultimately will be paid to the Trust established pursuant to a confirmed Plan to pay Asbestos

Claims against Sepco.

H.      The Debtor has demonstrated that the probability of success for the Debtor in

litigation over the matters resolved by the Agreement is uncertain; that the litigation of the

matters resolved by the Agreement would be complex and costly to the Debtor's bankruptcy

estate; and that the entry into the Agreement is necessary and appropriate to maximize the

value of the Debtor's estate, is consistent with the reasonable range of potential litigation

outcomes, and is in the best interests of the Debtor, its bankruptcy estate, and the Debtor's

creditors, and all parties in interest because, among other reasons, the Agreement contemplates

the payment of the Settlement Amount to the Trust (provided that the Plan is confirmed).

### Good Faith of Purchaser of the Policy Interests

I.      The Agreement was negotiated by the Parties, in good faith, from arm's-length bargaining positions, and without fraud or collusion. Each Party to the Agreement was represented by counsel. The sale consideration to be realized by the Debtor's bankruptcy estate pursuant to the Agreement is fair and reasonable. Hartford is a good faith purchaser of the Policy Interests for value within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protection thereof. Neither the Debtor nor Hartford, nor any of their representatives, have engaged in any conduct that would (i) cause or permit the Agreement, or the sale of the Policy Interests contemplated therein, to be avoided under Section 363(n) of the Bankruptcy Code, (ii) cause or permit any amounts, costs, attorneys' fees, expenses or punitive damages to be recovered under Section 363(n) of the Bankruptcy Code, or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

### Satisfaction of Section 363(f) Requirements

J.      Sepco may sell the Policy Interests free and clear of Interests under Section 363(f) of the Bankruptcy Code because one or more of the criteria set forth in Sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Without limiting the generality of the foregoing, those holders of Interests against any of the Policy Interests who did not object, or who withdrew their objections, to the Motion or the relief requested therein are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code, and each holder of an Interest in the Policy Interests can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by Section 363(f)(5) of the Bankruptcy Code.

K.      To the extent any Person has demonstrated an Interest in the Policy Interests that is entitled to adequate protection under the Bankruptcy Code, such Interest is adequately protected as required by Section 363(e) of the Bankruptcy Code, and in no circumstance will such Interest be satisfied by Hartford.

No Successor Liability

L.      The transfer of the Policy Interests pursuant to the Agreement does not and will not subject or expose Hartford to any liability, Claim, cause of action or remedy by reason of such transfer under (a) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity; or (b) any employment contract, understanding or agreement, including, without limitation, collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

M.      Hartford is not assuming any of the Debtor's obligations to its employees (including any obligations under the Debtor's bankruptcy estate's collective bargaining agreements, if any) by reason of the purchase of the Policy Interests.

N.      No common identity of officers or directors exists between Hartford and the bankruptcy estate or Debtor.

O.      Hartford is purchasing the Policy Interests pursuant to the Agreement and this Order. Hartford is not purchasing any other assets of Debtor's bankruptcy estate. Hartford shall not have any responsibility or liability with respect to any of the bankruptcy estate's other assets or for any liability of, or Claims against, the Debtor.

P.     Hartford is not purchasing any Interests (including Interests in the Policies) owned by or otherwise belonging to the Affiliates other than the Affiliates' Sepco-Related Policy Interests.

Q.     A sale of the Policy Interests other than one free and clear of Interests, if possible at all, would impact adversely on the Debtor's bankruptcy estate and would be of substantially less benefit to the Debtor, the creditors and the estate. Hartford would not purchase the Policy Interests, and pay the Settlement Amount, were the sale not free and clear of all Interests.

### Injunction

R.     Issuing an injunction under Section 105(a) of the Bankruptcy Code is essential to give effect to the sale of the Policy Interests to Hartford free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code. The Injunction as set forth in Paragraph 8 below is a necessary prerequisite for Hartford's agreement to the terms and conditions of the Agreement, and Hartford will not consummate the sale of the Policy Interests in the absence of such an injunction from this Court.

S.     To the extent that the holders of present and future Claims have any Interest in the Policy Interests that is entitled to adequate protection, such Interests are adequately protected as required by Section 363(e) of the Bankruptcy Code, and in no circumstance will such Interest be satisfied by Hartford.

T.     The Interests, if any, of any other insurer are adequately protected because the Agreement provides that Sepco and/or the Trust shall reduce any final judgment or final binding arbitration award, Claim against, or settlement with, any such insurer to the extent

necessary to eliminate any such insurer's Claim for contribution, subrogation, indemnification or similar Claim against Hartford (as provided in the Agreement).

For all of the foregoing and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.  The Motion is **GRANTED** and **APPROVED** in all respects.

2.  For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.  Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized to enter into and consummate the Agreement, including to (i) sell, transfer and convey the Policy Interests to Hartford in accordance with the terms and subject only to the conditions specified herein and in the Agreement, and (ii) release claims as set forth in the Agreement. The Debtor and Hartford are each hereby authorized to take all actions and execute all documents and instruments that the Debtor and Hartford deem necessary or appropriate to implement and effectuate the Agreement.

4.  The terms and provisions of the Agreement are approved in their entirety, and this Order and the Agreement shall be binding upon Sepco and its Affiliates, Hartford, all Persons holding Interests in the Policies or Claims against Sepco or the Debtor's bankruptcy estate, the FCR and each of the Persons whose interests or demands he represents, the Committee, Sepco's insurers other than Hartford, any actual or potential insureds under the Policies, all other parties-in-interest, and, upon its creation, the Trust, and each of the foregoing entities' respective successors and assigns. The sale of the Policy Interests by Sepco

and its Affiliates to Hartford, effective upon the Approval Date (or upon the Hartford's written election to waive the condition precedent as set forth in the Agreement), shall constitute a legal, valid, and effective transfer of the Policy Interests and shall vest Hartford with all right, title, and interest in and to the Policy Interests free and clear of all Interests pursuant to Section 363(f) of the Bankruptcy Code.

5.      Hartford shall pay to the Trust the Settlement Amount as provided in the Agreement; provided that if, at the time any such payment becomes due under the Agreement, a Trust has not been established in accordance with a Plan that has been confirmed by a Final Order of the Bankruptcy Court, such payment shall be deposited in the Qualified Settlement Fund ("QSF Fund") established or to be established by Sepco under Section 468B of the Internal Revenue Code.

6.      The sale of the Policy Interests to Hartford under the Agreement constitutes a transfer for reasonably equivalent value and fair consideration for purposes of Section 548 of the Bankruptcy Code and comparable provisions of non-bankruptcy law.

7.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code and subject to the consummation, as of the Approval Date (or upon Hartford's written election to waive the condition precedent set forth in the Agreement), the Policy Interests shall be and hereby are transferred to Hartford, free and clear of any and all Interests of all Persons in, to and with respect to the Policy Interests, including any and all Claims against Hartford for contribution, indemnity or other liability under, based upon, in connection with or attributable to the Policy Interests (including any Direct Action Claims), whether arising prior to, during, or subsequent to the Bankruptcy Case or imposed by agreement, understanding, law, equity or otherwise. Any and all Interests that the Court determines are entitled to protection under Section 363(e)

of the Bankruptcy Code shall attach to the proceeds of sale with the same validity, priority, force, and effect as such Interests had in the Policy Interests prior to entry of this Order, subject to the terms and conditions of any Plan confirmed for the Debtor, to the extent such terms and conditions are valid, binding and enforceable. Nothing contained herein is intended to nor shall be deemed to constitute a determination of the extent, validity or priority of any such Interests that may be asserted (including by any other insurance company). For the avoidance of doubt, the Policy Interests transferred to Hartford pursuant to this Order do not include any Interests (including Interests in the Policies) owned by or otherwise belonging to the Affiliates other than the Affiliates' Sepco-Related Policy Interests.

8. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, all Persons who have held or asserted, who hold or assert, or who may in the future hold or assert any Claim or Interest of any kind or nature against or in any of the Debtor's bankruptcy estate, Sepco, the Policies, or Hartford based upon, arising under or out of, or in any way attributable to the Policy Interests, whenever or wherever arising or asserted (including all thereof in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty), shall be and hereby are permanently stayed, restrained and enjoined from asserting any such Claims or Interests against Hartford and from continuing, commencing, or otherwise proceeding or taking any action against Hartford to enforce such Interests or Claims or for the purpose of directly or indirectly collecting, recovering or receiving payments from Hartford to recover with respect to any such Claim or Interest; provided, for the avoidance of doubt, that this Injunction shall not apply to or otherwise affect any past, present, or future Claims by or on behalf of the Affiliates that do not arise from or relate to the Affiliates' Sepco-Related Policy Interests.

9.     Notwithstanding any other provision of this Order, nothing in this Order shall release, enjoin, transfer, or otherwise affect any past, pending, or future Claims by or on behalf of the Affiliates that do not arise from or relate to the Affiliates' Sepco-Related Policy Interests.

10.     Hartford is not, and shall not be deemed to be, a successor to the Debtor or the Debtor's bankruptcy estate by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise. Hartford shall not assume any liabilities of the Debtor or the bankruptcy estate.

11.     The transactions contemplated by the Agreement, including the sale of the Policy Interests to Hartford free and clear of all Interests, are undertaken by Hartford in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Policy Interests and the transactions contemplated by the Agreement shall not affect the validity of the sale of the Policy Interests to Hartford, unless such authorization is duly stayed pending such appeal. Hartford is a purchaser in good faith of the Policy Interests and shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

12.     Pursuant to Bankruptcy Rule 9019, the settlement and mutual release of Claims as set forth in the Agreement are hereby approved as of the Effective Date of the Agreement. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(g).

13.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

14.     This Court shall, to the extent authorized by 28 U.S.C. § 1334(b), retain jurisdiction to interpret and enforce the provisions of this Order and the Agreement in all respects. Such jurisdiction shall be retained even if a Plan is confirmed and/or the Bankruptcy Case is closed, and the Bankruptcy Case may be reopened for such purpose.

15.     Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the settlement contemplated by the Agreement and this Order.

16.     The provisions of this Order are mutually dependent and are not severable.

17.     Pursuant to Bankruptcy Rules 5003 and 9021 (and Fed. R. Civ. P. 58), the Clerk of this Court is directed forthwith to enter this Order in the records of the Bankruptcy Case as a final order and judgment.

                            #   #   #

Submitted by:

_____
Harry W. Greenfield (0003839)
Jeffrey C. Toole (0064688)
Heather E. Heberlein (0083828)
BUCKLEY KING LPA
1400 Fifth Third Center
600 Superior Avenue East
Cleveland, Ohio 44114-2652
Telephone: (216) 363-1400
Facsimile: (216) 579-1020
Email: greenfield@buckleyking.com
Email: toole@buckleyking.com
Email: heberlein@buckleyking.com

*Attorneys for Sepco Corporation,
Debtor and Debtor-in-Possession*